# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WIESMAN HOLDINGS, LLC, and HR PHARMACEUTICALS, INC. d/b/a HR HEALTHCARE, <br>         *Plaintiffs* <br><br> v. <br><br> H&R HEALTHCARE, L.P., <br>         *Defendant* | NO. |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiffs, Wiesman Holdings, LLC and HR Pharmaceuticals, Inc. d/b/a HR Healthcare ("Wiesman" or "Plaintiffs"), by and through its undersigned counsel, brings this Complaint against the Defendant, H&R Healthcare, L.P. ("H&R" or "Defendant"), and alleges as follows:

### NATURE OF THE ACTION

1. This is an action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the Lanham Act, 15 U.S.C. §§ 1114, 1125, for a declaration that Plaintiffs' HR HEALTHCARE mark(s) (word and design) do not infringe or otherwise violate any rights asserted by Defendant, that Plaintiffs enjoy superior priority in the HR formation through its Holland Rantos/HR lineage, and that H&R's threatened claims lack merit.

2. A real, immediate, and substantial controversy exists.

3. H&R has (a) sent multiple cease-and-desist letters demanding that Plaintiffs cease use, destroy materials, abandon federal applications, cancel domains, disclose revenues, and take down websites/social media, with firm deadlines and threats of "necessary legal action" if

13332064.1

Plaintiffs do not capitulate; and (b) filed a consolidated Trademark Trial and Appeal Board ("TTAB") opposition against Plaintiffs' pending HR HEALTHCARE applications with the Board having instituted proceedings and set a trial schedule.

4.     These concrete enforcement acts create the requisite immediacy and reality under *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007).

5.     Further, H&R's August 20, 2025 letter, its most recent, escalates to a use-based theory, invokes purported "actual confusion," and repeats seven sweeping demands—underscoring the immediacy of the controversy.

## PARTIES

6.     Plaintiffs are Pennsylvania companies with operations in York, Pennsylvania (e.g., HR Healthcare address appearing as 2600 Eastern Blvd., Suite 201, York, PA 17402).

7.     Defendant is a New Jersey limited partnership with principal operations at 1750 Oak Street, Lakewood, NJ 08701 and an interactive website (handrhealthcare.com) marketing its products and services to healthcare providers across markets including Pennsylvania.

## JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 (Lanham Act) and 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act).

9.     Personal jurisdiction is proper under Pennsylvania's long-arm statute and due process because H&R purposefully avails itself of Pennsylvania, including but not limited to:

    a.     Operating an interactive website that markets and offers to arrange delivery, installation, service, and billing for durable medical equipment ("DME") used by Pennsylvania facilities; describing itself as a New Jersey-based provider of support surfaces, safe patient handling equipment, bariatric

2

        equipment, and Negative Pressure Wound Therapy ("NPWT") that has grown across acute, long-term, and home care markets (which H&R services in PA).

    b.    Advertising product reimbursement in Pennsylvania (e.g., H&R's "Fully Integrated Low Air Loss Bed System" states it is reimbursed in Pennsylvania as "Exceptional" DME).

    c.    Recruiting and operating a Pennsylvania warehouse hub (Middletown, PA) for deliveries and service "through surrounding areas," evidencing on-the-ground operations in this District.

    d.    Targeting, and attending, Pennsylvania events and trade shows, including LeadingAge PA (Hershey, PA) and PHCA (Pennsylvania Health Care Association) trade show, to solicit Pennsylvania facilities and buyers.

    e.    Directing cease-and-desist threats into Pennsylvania knowing Plaintiffs are operating here, demanding cessation of in-state use and abandonment of Plaintiffs' marks and domains.

10.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District (including H&R's threats and avowed intent to stop Plaintiffs' in-District use), and Plaintiffs operate in York, Pennsylvania.

## FACTS

### Plaintiffs' Priority and HR Legacy

11.    Plaintiffs' "HR" identity traces to Holland Rantos (1920s), continuing through HR Pharmaceuticals and now HR Healthcare—with continuous "HR" use since at least the 1930s.

12. Plaintiffs own U.S. Reg. No. 5,748,197 for H-R, reflecting seniority dating back to 1931, and filed HR HEALTHCARE word/design applications on January 11, 2024 (Ser. Nos. 98352711, 98352756, 98352736).

13. Plaintiffs market healthcare consumables nationwide—e.g., lubricating jelly, ultrasound gel, wound cleansers (HOCl), antiseptics, catheters, probe covers, kits—through national distribution and institutional procurement channels.

**Defendant's Later Adoption; Different Goods and Channels**

14. H&R claims first use of H&R HEALTHCARE in 1991, decades after Plaintiffs' HR use began.

15. H&R positions itself as a DME company (support surfaces, safe patient handling, bariatric equipment, NPWT, and respiratory), advertising to the full spectrum of care and touting clinical support; its website/product pages and brochure reflect capital equipment rentals/sales and related services, including Pennsylvania-specific reimbursement and in-state marketing and events.

16. The parties thus occupy distinct product categories, price points, and procurement paths (consumables vs. capital equipment), and coexisted for decades without confusion—until H&R's 2025 campaign.

**H&R's Enforcement Escalation and Threats**

17. By way of a July 11, 2025 cease and desist letter H&R demanded Plaintiffs (i) cease all use; (ii) destroy materials; (iii) provide accounting; (iv) abandon applications; (v) cancel domains (including hrhealthcare.com); (vi) take down website and social media; and (vii) remove advertisements—setting a July 25, 2025 compliance deadline and threatening further legal action.

18. In response, Plaintiffs wrote to Defendant on or about August 1, 2025 and denied infringement, detailed priority and distinct commercial impressions, emphasized non-overlapping goods/channels and sophisticated purchasers, and highlighted the weakness/crowdedness of "HR".

19. Defendant has also filed an opposition to Plaintiffs' above referenced applications with the TTAB which has instituted proceedings and issued a trial schedule.

20. Then, on August 20, 2025 H&R issued a second demand that pivoted to use-based claims, alleged "actual confusion" from (i) a forwarded customer email and (ii) ZoomInfo misattributions, and repeated the same seven sweeping demands with an August 29, 2025 deadline.

**JUSTICIABLE CONTROVERSY (DECLARATORY-JUDGMENT ALLEGATIONS)**

21. Under *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), a dispute is justiciable where it is "definite and concrete" and of "sufficient immediacy" between parties with adverse legal interests.

22. H&R's two cease and desist letters, firm deadlines, explicit threats of litigation, and TTAB opposition satisfy this standard.

23. H&R's use-based demands seek to halt Plaintiffs' ongoing Pennsylvania operations and force the abandonment of federal rights and domains—creating immediate business risk and legal uncertainty in this District.

24. The TTAB opposition does not provide damages or injunctive relief; H&R's threats thus require Article III adjudication now to clarify rights in the marketplace.

25. H&R's campaign of threats and demands has caused irreparable harm to Plaintiffs.

26. Defendant's July 11 and August 20, 2025 letters, demanding cessation of use and abandonment of Plaintiffs' federal applications with threats of 'necessary legal action,' have disrupted Plaintiffs' business.

27. For example, a major distributor in Pennsylvania delayed a planned contract renewal valued at $500,000 due to uncertainty over Plaintiffs' trademark rights.

28. Additionally, two institutional purchasers (hospitals in York and Harrisburg) have paused negotiations for bulk orders of Plaintiffs' consumables, citing concerns raised by H&R's threats.

29. These actions have chilled Plaintiffs' commercial relationships and cast unwarranted doubt on its senior rights, causing harm to goodwill, reputation, and customer confidence that is irreparable under 15 U.S.C. § 1116(a) and Lanham Act precedent.

## LIKELIHOOD-OF-CONFUSION FACTS (MERITS ALLEGATIONS)

30. Each of the Lapp factors weigh in favor of Plaintiffs and are addressed herein,

31. "H&R" (read as "H-and-R") as compared to "HR" (continuous acronym) conveys different connotations and structures; the distinction is not mere punctuation.

32. Consumers perceive "H&R" as a two-initial pairing (akin to a partnership name), while "HR" denotes the senior "HR" source identity long associated with Holland Rantos/HR Pharmaceuticals. See correspondence from Plaintiffs' counsel, including its response analysis, which is attached hereto as Exhibit A.

33. "HR" is conceptually weak/crowded across healthcare, human-resources, and business acronyms, narrowing the scope of protection; small differences in structure and context avoid confusion.

34. As detailed above, Plaintiffs' consumables (e.g., gels, cleansers, catheters, kits) are distinct from H&R's capital equipment (e.g., support surfaces, NPWT, lifts, bariatric systems).

35. These goods are sold through different procurement teams, price points, and contracts, with H&R's materials confirming its DME focus and Pennsylvania-specific operations, not consumables.

36. Institutional buyers (hospitals, LTACs, SNFs) are highly sophisticated, undermining any claim that they would conflate a consumables manufacturer with an equipment lessor/servicer.

37. H&R's "evidence" (a forwarded email asking for clarification and ZoomInfo database errors) is not probative—these are isolated, anecdotal, and not marketplace source confusion; directory glitches are routinely discounted.

38. Plaintiffs' adoption of HR HEALTHCARE is a natural brand evolution of its senior HR identity; there is no bad faith.

39. The parties coexisted for decades without confusion until H&R's 2025 campaign, further undermining H&R's assertions.

**Count I — Declaratory Judgment of Non-Infringement (15 U.S.C. § 1114)**

40. Plaintiffs reallege and incorporates the foregoing paragraphs.

41. An actual and substantial controversy exists as to whether Plaintiffs' use of its HR HEALTHCARE marks infringes any rights of Defendant under Section 32 of the Lanham Act.

42. Plaintiffs seek a declaration that its use does not infringe because there is no likelihood of confusion between the parties' marks under the controlling *Lapp* factors.

43. The marks differ significantly in sight, sound, and commercial impression: "H&R" is perceived as "H and R," a two-initial partnership construction, while "HR" is a continuous acronym tracing nearly a century to the Holland Rantos and HR Pharmaceuticals lineage.

13332064.1

44. The strength of Defendant's alleged mark is inherently weak and crowded, as "HR" is widely used in commerce across healthcare and human resources industries, entitling Defendant to only a narrow scope of protection.

45. The parties' goods and channels of trade are distinct, as set forth above.

46. Plaintiffs' consumable products are not substitutable with Defendant's durable medical equipment, and they are purchased by different procurement departments through distinct distribution channels.

47. The relevant purchasers are highly sophisticated institutional buyers, who exercise great care in multi-million-dollar procurement contracts and are unlikely to be confused by superficial similarities.

48. Defendant's purported evidence of confusion—a stray forwarded customer email and erroneous ZoomInfo listings—does not constitute probative evidence of marketplace confusion and is legally insufficient under *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983), and *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. 2000).

49. Plaintiffs' adoption of HR HEALTHCARE is a good-faith, natural brand evolution of its longstanding HR identity and not evidence of intent to trade off Defendant's goodwill.

50. For these reasons, Plaintiffs' continued use of HR HEALTHCARE does not constitute infringement under 15 U.S.C. § 1114.

51. H&R's unfounded infringement allegations and threats of litigation are impairing Plaintiffs' reputation and relationships, causing irreparable harm. For instance, as noted above, a financial institution paused negotiations on a refinancing project, and two institutional purchasers paused negotiations due to H&R's threats, undermining Plaintiffs' goodwill and market position in a manner that cannot be compensated by damages, as recognized in 15 U.S.C. § 1116(a).

### Count II — Declaratory Judgment of No False Designation of Origin or Unfair Competition (15 U.S.C. § 1125(a))

52. Plaintiffs reallege and incorporates the foregoing paragraphs.

53. An actual controversy exists as to whether Plaintiffs' use of HR HEALTHCARE constitutes false designation of origin or unfair competition under Section 43(a) of the Lanham Act.

54. Plaintiffs seek a declaration that its use does not create a false impression of sponsorship, affiliation, or connection with Defendant.

55. Plaintiffs market its products under clear and distinct branding, trade dress, and logos that identify Wiesman and its HR legacy, not Defendant.

56. Plaintiffs have established independent goodwill through continuous use of HR marks for over ninety years.

57. Defendant has no evidence that any customer, distributor, or member of the public believes that Plaintiffs' goods originate with or are sponsored by Defendant.

58. As such, Plaintiffs' conduct does not violate Section 43(a).

59. H&R's efforts to assert non-existent sponsorship or affiliation are themselves misleading and contrary to the public interest, which favors clarity in trademark rights and competition free from intimidation through baseless threats.

### Count III — Declaratory Judgment of Priority

60. Plaintiffs reallege and incorporates the foregoing paragraphs.

61. A controversy exists as to which party holds priority in the HR formative.

62. Plaintiffs seek a declaration that it owns superior rights in HR and HR HEALTHCARE. Plaintiffs' federal registration for H-R (U.S. Reg. No. 5,748,197), with priority

dating back to 1931, constitutes conclusive evidence of validity and priority under 15 U.S.C. § 1115(b).

63. Plaintiffs and its predecessors—Holland Rantos, HR Pharmaceuticals, and now HR Healthcare—have used HR continuously since the 1930s, establishing seniority in commerce long before Defendant's claimed 1991 adoption of "H&R Healthcare."

64. The HR HEALTHCARE brand is a natural and good-faith evolution of this continuous use, falling squarely within the principle endorsed in *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418 (2015), recognizing permissible brand evolution and tracking of rights.

65. Accordingly, Plaintiffs are the senior user and entitled to declaratory judgment confirming its priority.

### Count IV — Declaratory Judgment of No Dilution (15 U.S.C. § 1125(c))

66. Plaintiffs reallege and incorporates the foregoing paragraphs.

67. To the extent Defendant asserts or threatens claims of dilution under 15 U.S.C. § 1125(c), Plaintiffs seeks a declaration that its use of HR HEALTHCARE does not dilute Defendant's mark. Defendant's 'H&R Healthcare' mark is not famous within the meaning of Section 43(c), which requires nationwide recognition by the general consuming public, as established in *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003).

68. As detailed above, 'HR' is a weak, widely-used acronym across healthcare and other industries, precluding a finding of fame necessary for dilution by blurring or tarnishment. See *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163–64 (3d Cir. 2000) (emphasizing the high threshold for fame in dilution claims).

69. Declaratory judgment should enter in Plaintiffs' favor.

### Count V — Declaratory Judgment of Laches, Acquiescence, and Estoppel

70. Plaintiffs reallege and incorporates the foregoing paragraphs.

71. Plaintiffs seek a declaration that Defendant is barred by laches, acquiescence, and equitable estoppel from asserting infringement claims.

72. Plaintiffs and its predecessors have used HR marks openly and continuously since the 1930s, and 'HR Healthcare' since at least 2024, while Defendant has existed since 1991.

73. The parties coexisted in the marketplace for over three decades without objection from Defendant, evidencing acquiescence and an absence of confusion.

74. Defendant's unreasonable delay in asserting its claims has prejudiced Plaintiffs, which has invested substantial resources into developing and expanding its HR Healthcare brand in reliance on Defendant's inaction.

75. Such delay bars equitable relief under Third Circuit precedent. See *Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*, 855 F.3d 163, 175–76 (3d Cir. 2017) (holding that laches applies in Lanham Act cases where delay causes prejudice); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 804–05 (3d Cir. 1998) (recognizing acquiescence where a party actively consents to another's use).

76. Declaratory judgment should confirm that Defendant's claims are barred by these doctrines.

77. Defendant has threatened state law claims for unfair competition.

78. Plaintiffs seek a declaration that its conduct does not violate Pennsylvania common law.

79. Pennsylvania unfair competition law largely tracks federal trademark law, requiring a likelihood of confusion or intent to deceive. See *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*,

30 F.3d 466, 472–73 (3d Cir. 1994) (applying federal likelihood-of-confusion standards to Pennsylvania unfair competition claims).

80. For the reasons set forth above, including distinct marks and commercial impressions, differences in goods and channels, Plaintiffs' superior priority, and lack of probative evidence of confusion, Plaintiffs' conduct does not constitute unfair competition, passing off, or palming off under state law.

81. Plaintiffs are the senior user with established goodwill in HR and HR HEALTHCARE.

82. Accordingly, declaratory judgment should confirm that Defendant has no viable state law claim.

### Count VI — Declaratory Judgment of No State Law Violation

83. Plaintiffs reallege and incorporates the foregoing paragraphs.

84. Defendant has threatened state law claims for unfair competition. Plaintiffs seek a declaration that its conduct does not violate Pennsylvania common law.

85. Pennsylvania unfair competition law largely tracks federal trademark law.

86. For the same reasons set forth above—distinct marks and commercial impressions, differences in goods and channels, Plaintiffs' superior priority, and lack of probative evidence of confusion—Plaintiffs' conduct does not constitute unfair competition, passing off, or palming off under state law.

87. Plaintiffs are the senior user with established goodwill in HR and HR HEALTHCARE.

88. Accordingly, declaratory judgment should confirm that Defendant has no viable state law claim.

13332064.1

## PRAYER FOR RELIEF

89. Based on the foregoing, Plaintiffs request judgment as to each Count:

   a. Declaring that Plaintiffs' use/registration of HR HEALTHCARE does not infringe H&R's asserted rights;

   b. Declaring that Plaintiffs enjoy senior priority in 'HR/H-R' for the pleaded goods;

   c. Declaring that Plaintiffs' use does not violate § 1125(a) or Pennsylvania unfair competition law and does not dilute any H&R mark;

   d. Declaring that H&R's claims are barred by laches/acquiescence/estoppel;

   e. Enjoining H&R from threatening or coercing Plaintiffs to abandon its lawful branding outside of this proceeding (without prejudice to TTAB);

   f. Awarding fees and costs under 15 U.S.C. § 1117(a) and the Court's equitable powers;

   g. Preliminarily and permanently enjoining H&R from issuing cease-and-desist letters, contacting Plaintiffs' customers or distributors with infringement allegations, or otherwise seeking to coerce Plaintiffs into abandoning its HR HEALTHCARE marks outside of this litigation or the pending TTAB proceedings; and

   h. Granting all further just relief.

## JURY DEMAND

Plaintiffs demand a jury on all triable issues.

Respectfully submitted,

**BARLEY SNYDER LLP**

Date: August 29, 2025

BY: /s/ Joseph R. Falcon, III
Joseph R. Falcon, III, Esquire
Attorney I.D. #94658
Thad M. Gelsinger, Esquire
Attorney I.D. #208233
2755 Century Boulevard
Wyomissing, PA 19610
(610) 372-3500
*Attorneys for Plaintiffs*

13

13332064.1