# EXHIBIT "A"

9271334.1



2 Great Valley Parkway, Suite 110
Malvern, PA 19355
Tel (610) 889-3699  Fax (610) 889-3696
www.barley.com

**Joseph R. Falcon III, Esquire**
Direct Dial Number: (610) 889-3697
E-mail: jfalcon@barley.com

August 1, 2025

Via Email (andrew@bochner.law)

Andrew D. Bochner, Esq.
BOCHNER PLLC
1040 Avenue of the Americas, 15TH Floor, New
York, NY 10018

Dear Attorney Bochner:

In response to your letter dated July 11, 2025 alleging infringement by our client, Wiesman Capital, a holding company for Wiesman Holdings, LLC ("Wiesman") (an affiliated company of HR Pharmaceuticals, Inc.) , and the holding company for HR Pharmaceuticals, Inc., doing business as ("DBA") HR Healthcare, of H&R Healthcare, L.P.'s ("H&R") non-federally recognized trademarks hereinafter ("H&R marks"):

- **H&R HEALTHCARE** (word mark)



After thoroughly reviewing your claims, we respectfully disagree with your assertions that our filed application for the marks:

- HR HEALTHCARE (word mark), Ser. No. 98352711

- HRHealthCare Ser. No. 98352756

1



- Ser. No. 98352736

Firstly, the H&R marks differ significantly from "HR HEALTHCARE" "HR HEALTHCARE (Design)" and "HR HEALTHCARE POSTIVELY IMPACTING PEOPLE'S LIVES (Design)" in both visual appearance and phonetic sound. Courts have consistently held that the overall impression of the marks is critical in determining the likelihood of confusion. In *Kellogg Co. v. Pack'em Enterprises, Inc*., 951 F.2d 330 (Fed. Cir. 1991), the court emphasized that the marks must be considered in their entirety. The distinction between "H&R" and "HR" creates a distinct commercial impression that minimizes the likelihood of confusion. Specifically, H&R's marks feature an ampersand ("&"), imparting a unique "H and R" implication, in contrast to "HR HEALTHCARE," which utilizes a continuous "HR" acronym rooted in the legacy of HR Pharmaceuticals, Inc., which traces its origins to the Holland Rantos Company founded in 1925. Our client transitioned from HR Pharmaceuticals, Inc. to HR HealthCare in February 2024, building on this longstanding "HR" heritage. Judicial evaluations typically consider marks in their entirety, encompassing visual, auditory, and perceptual aspects, as articulated in *Polaroid Corp. v. Polarad Elecs. Corp*., 287 F.2d 492 (2d Cir. 1961). Moreover, analogous cases reinforce this distinction; for instance, in *H&R Block, Inc. v. Block, Inc*., 58 F.4th 939 (8th Cir. 2023), the court found no likelihood of confusion between "H&R Block" and "Block" despite shared elements in financial services, emphasizing that minor differences in structure and connotation suffice to differentiate marks. Moreover, the stylized features and accompanying slogan in Serial No. 98352736 serve to further distinguish the marks.

Secondly, based solely on the respective goods/services, it is evident that our client's goods for " Antiseptic preparations; medical cleansers for wounds; Topical gel for medical and therapeutic use, namely, ultrasound gel" and related services for "Medical kits, namely, ultrasound accessory kits comprised of ultrasound probe cover, ultrasound gel for use with ultrasound procedures, rubber bands for use in securing probe covers; urology catheters; catheter insertion kits comprised of a urine collector bag, vinyl powder-free gloves, lubricating jelly, under pad, Benzalkonium Chloride Wipe; Catheter Insertion Tray kits comprised of lubricating jelly syringe, sterile water syringe, under pad, fenestrated drape, Benzalkonium Chloride and

2

13199738.1

Povidone-Iodine Wipe, vinyl gloves, and graduated collection basin; Catheter Trays comprised of catheter with pre-connected drainage bag/urine meter with drainage bag, specimen container, sterile water syringe, lubricating jelly syringe, povidone-iodine solution, foam swab sticks, prep pack with castile soap towelettes, hand sanitizer, nitrile gloves, under pad, fenestrated drape, catheter with pre- connected drainage bag/urine meter with drainage bag, specimen container, and protect pack with skin protectant wipe, catheter securement device; clamps for medical use, namely, clamps for securing urinary catheters" is clearly different from the goods and services of H&R's marks which are directed to a New Jersey-based supplier of durable medical equipment, such as support surfaces, negative pressure wound therapy systems, safe patient handling devices, and bariatric equipment, primarily serving acute, long-term, and home care environments, especially since the H&R marks are directed and sold in different trade channels. Furthermore, H&R's common law rights are geographically limited to areas of proven market penetration, primarily in the Northeast U.S., whereas our client's operations extend nationally and beyond, with no overlap in international markets where H&R has no presence. This disparity in goods and channels further diminishes any potential for confusion, as courts have held that non-competitive products in distinct markets warrant narrower protection. See *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983).

Thirdly, iterations of "HR" and "Healthcare" are used by numerous businesses across the United States, diluting any claim of exclusivity or distinctiveness by your clients. *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739 (2d Cir. 1998), highlights that in a crowded field, minor differences between marks are sufficient to distinguish them. A common law search reveals various entities using "HR" "Healthcare" or similar marks, further weakening your client's claim. For example, companies such as ADP and Conduent offer "HR" solutions specifically for healthcare providers, often denoting Human Resources in medical contexts, alongside broader healthtech branding by entities like GE HealthCare. When a term is commonly used by multiple businesses, consumers are more likely to distinguish between different sources based on other elements of the marks and the context of their use. As explained in McCarthy on Trademarks and Unfair Competition § 11:85 (5th ed.), a mark "hemmed in on all sides by similar marks on similar goods" receives limited protection, a principle applied in saturated fields like healthcare.

3

Applying the *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961), factors for determining the likelihood of confusion, it is evident that confusion is unlikely:

- **Strength of the Mark**: As previously discussed, "H&R" is a weak mark due to its widespread use. A weak mark receives limited protection and is less likely to cause confusion. In a crowded healthcare field, this weakness is amplified, as multiple entities employ similar acronyms, reducing the mark's distinctiveness.

- **Similarity of the Marks**: "" HR HEALTHCARE" "HR HEALTHCARE (Design)" and "HR HEALTHCARE POSTIVELY IMPACTING PEOPLE'S LIVES (Design)" is distinguishable from "H&R HEALTHCARE" H&R's marks feature an ampersand ("&"), imparting a unique "H and R" implication, in contrast to "HR HEALTHCARE," which utilizes a continuous "HR" acronym rooted in the legacy of HR Pharmaceuticals, Inc. The differences in the marks are sufficient to avoid confusion, especially given the distinction between "H&R" and "HR" component. Clearly, the marks are different in spelling, connotation and sound.

- **Proximity of the Goods**: The goods/services within the H&R's marks are directed to durable medical equipment, such as support surfaces, negative pressure wound therapy systems, safe patient handling devices, and bariatric equipment, primarily serving acute, long-term, and home care environments while Applicant's goods and services are entirely different. Our client's focus on healthcare consumables, including lubricating jellies, urology products, ultrasound gels, antiseptic solutions, wound care solutions, and catheters, operates through distinct distribution channels.

- **Bridging the Gap**: There is no intent or plan by our clients to compete directly with your clients. The target markets and promotional strategies are distinct, reducing the likelihood of confusion.

- **Actual Confusion**: You have not provided us with documentation illustrating actual confusion. Therefore, presently. there is no evidence of actual confusion. We request that you furnish any specific evidence, such as communications, customer statements, or other documentation, to substantiate your claims of confusion, as mere allegations are insufficient under 15 U.S.C. § 1114. Courts

4

often consider the absence of actual confusion as a strong indicator that confusion is unlikely. Notably, in cases like H&R Block, the lack of substantiated confusion evidence weighed heavily against infringement findings.

- **Defendant's Intent**: There is no intent to infringe upon your non-federally recognized trademarks. Our client selected their mark independently, without knowledge of your client's use. The absence of bad faith is a crucial factor in trademark infringement cases. The mark was developed autonomously, leveraging the established goodwill from the "HR" brand's historical use.

- **Sophistication of the Buyers**: Consumers utilizing your goods/services are likely to be discerning and not easily confused. The nature of these goods/services typically involves careful selection and consideration, further reducing the risk of confusion. Healthcare professionals and institutions, as sophisticated purchasers, are particularly attuned to brand distinctions in procurement decisions.

We acknowledge that H&R Healthcare has established common-law trademark rights in the H&R marks based on actual use of the marks for medical equipment-related services since at least as early as December 1991, about 32 years before the HR HEALTHCARE Applications. Wiesman Holdings is the owner of Mark "H-R" Registration No. 5748197. This mark establishes first use in commerce with a date of May 01, 1931. This priority stems from continuous commercial use in healthcare consumables since at least 1931, predating H&R's use by approximately 60 years and conferring superior rights in relevant markets. Consequently, we have priority use of "HR" nearly 60 years prior to your client's use of H&R Healthcare. Given these factors addressed above and also our seniority use of "HR" there is no actual confusion between the marks. We believe you will have difficulty in prevailing in opposition proceedings against our client's marks.

Based on the foregoing points and legal precedents, we assert that our use of ""HR HEALTHCARE" "HR HEALTHCARE (Design)" and "HR HEALTHCARE POSTIVELY IMPACTING PEOPLE'S LIVES (Design)"" does not infringe on your client's trademark rights. We request that you reconsider your position and withdraw your demands. We are prepared to defend our rights if necessary but hope to resolve this matter amicably. To that end, we are open

13199738.1

to settlement discussions or further dialogue to avoid escalation. Please let us know if you would like to discuss this further.

Thank you for your attention to this matter.

Very truly yours,

*/Joseph R. Falcon/*

Joseph R. Falcon III

13199738.1